Robert S. CROWDER, Julia K.
Crowder, and Henry C.
Cooper, Plaintiffs,

v.

SOUTHERN BAPTIST CONVENTION,
and Executive Committee of the South-
ern Baptist Convention, Defendants.

Civ. A. No. C85–4582A.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 5, 1986.

Jane F. Vehko, Bondurant, Mixson & El-
more, Atlanta, Ga., for plaintiffs.

James P. Guenther, Nashville, Tenn.,
Griffin B. Bell, King & Spalding, Atlanta,
Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This action is presently before the court
on numerous motions by the parties; the
motions of primary importance are defend-
ants' motion for summary judgment based
on certain jurisdictional grounds and plain-
tiffs' motion for summary judgment on the
merits. The court GRANTS defendants'
motion for summary judgment, thereby
rendering plaintiffs' motion for summary
judgment and all other pending motions
moot.

### FACTUAL BACKGROUND

This is an action seeking declaratory and
injunctive relief against the Southern Bap-
tist Convention (the "SBC" or the "Conven-
tion") and the Executive Committee of the
Southern Baptist Convention (the "Execu-
tive Committee"). The plaintiffs were duly
elected and registered messengers to the
1985 annual meeting of the SBC held in
Dallas, Texas from June 11 to June 13,
1985. They have also been selected as
messengers to the 1986 Convention, to be

held June 10–12, 1986, in Atlanta, Georgia. Plaintiffs contend that certain rulings by the President and Chair of the Convention, Reverend Dr. Charles Stanley, violated the SBC's bylaws, because they violated certain provisions of *Robert's Rules of Order*, which is specifically incorporated into the SBC bylaws, through bylaw 11. The specific facts underlying the present dispute are summarized below.

The Southern Baptist Convention is a religious body, incorporated and created "for the purpose of eliciting, combining, and directing the energies of the Baptist denomination of Christians, [and] for the propagation of the gospel...." The Convention comes into being in a corporeal sense for three days each year when that year's duly elected and registered messengers convene for an annual meeting to conduct the Convention's business. This business for any given year includes the election of Convention officers (*e.g.*, president, first vice-president, etc.), as well as the election of persons to fill positions on various committees. In each year, the messengers are those members of cooperating missionary Baptist churches who have been elected by their respective churches as messengers to the Convention.

Plaintiffs were three of some 45,000 Baptist messengers who convened in Dallas, Texas in June 1985 for the 1985 Convention. At that meeting a committee called the "Committee on Boards, Commissions, and Standing Committees" (the "1985 Nominating Committee") was elected by a majority of the registered messengers present and voting. This committee is responsible for identifying vacancies within the trusteeships of the various theological seminaries, missionary agencies, and other agencies associated with the SBC. In addition to identifying the vacancies, this committee has the task of nominating persons to fill those vacancies to be voted on by the messengers to the 1986 Convention.

Plaintiffs contend that certain bylaws were misinterpreted and that certain parliamentary errors occurred during the process of electing the 1985 Nominating Committee. To understand plaintiffs' contentions the particular events surrounding the election of the 1985 Nominating Committee must be described.

On June 12, 1985, during the 1985 Convention, the Committee on Committees submitted its slate of candidates for the Nominating Committee. Before that slate was voted on by the messengers, a motion was made by one of the messengers, Messenger Slatton, to substitute a new and different slate of candidates. The Convention Chair, Reverend Dr. Charles Stanley, ruled Messenger Slatton's motion out of order. The basis for Reverend Dr. Stanley's ruling was that the nominating report could be amended only on an individual-by-individual basis, as opposed to by slate. Plaintiffs contend that Reverend Dr. Stanley's ruling was incorrect and was in violation of several bylaws. This ruling was appealed to the floor of the Convention where the majority of the registered messengers present and voting voted to overrule the Chair's ruling. The morning session was then closed. When the evening session convened, Reverend Dr. Stanley again ruled Dr. Slatton's motion out of order, this time on the ground that nominations from the floor of the Convention in any form (whether by individual or by slate) were prohibited by the bylaws. Plaintiffs contend that they attempted to appeal this ruling but that they were not recognized by the Chair. The slate of candidates proposed by the Committee on Committees was elected by a majority of the messengers as the 1985 Nominating Committee.

Plaintiffs Robert and Julia Crowder petitioned the Executive Committee to use its powers to correct the allegedly erroneous ruling made at the 1985 Convention. The Executive Committee affirmed the election of the 1985 Nominating Committee. Plaintiffs then instituted this action, seeking a declaratory judgment on the interpretation of certain bylaws; an injunction compelling compliance with such interpretations; and an injunction prohibiting the members of the 1985 Nominating Committee from continuing to serve. Further facts will be

disclosed as necessary for the discussion of the pending motions.

## DISCUSSION

Defendants have moved to dismiss this action on two grounds. First, defendants contend that plaintiffs' claims do not satisfy the amount-in-controversy requirement established by 28 U.S.C. § 1332 (West Supp.1985). Second, defendants contend that the First Amendment of the United States Constitution precludes this court from entertaining and/or resolving this controversy. Because defendants relied on matters outside the pleadings this court converted the motion to dismiss into a motion for summary judgment by Order dated February 12, 1986. The court will first consider defendants' argument regarding the First Amendment.

### First Amendment Concerns

Defendants contend that this court lacks jurisdiction over this action because it involves the resolution of an ecclesiastical controversy in violation of the First Amendment's requirement of separation of church and state. This court agrees with defendants.

■■■ It has long been a fundamental proposition of constitutional law that civil tribunals have no power to resolve disputes which are ecclesiastical in nature. *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871). In an attempt to avoid this limitation on the court's power, plaintiffs contend that this dispute can be decided by this tribunal because it can be resolved through the application of neutral principles of law. Accord-

ing to plaintiffs, this is true because this case does not involve a question of Baptist doctrine or Christian religious belief, but instead involves only an interpretation of *Roberts Rules of Order* which, in plaintiffs' words, is "as secular as the Constitution or the Civil Rights Act." (Plaintiffs' Brief in Support of Summary Judgment, p. 47). The court disagrees with plaintiffs for the following reasons. First, the court finds that the doctrine of neutral principles of law is not relevant in deciding whether a court can resolve a dispute, but is only applicable as a method of resolving a dispute over which a court has already determined it has jurisdiction. The issue, therefore, is whether this court can decide the dispute before it; in this regard the court rejects, as an oversimplification, plaintiffs' characterization of the present dispute. The court will now expand on its reasoning.

In concluding that the present dispute can be decided by this court simply because it is possible to resolve it by neutral principles of law plaintiffs rely heavily on *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). *Jones* involved a dispute over the ownership of Church property in Macon, Georgia, following a schism within the local church. The Georgia Supreme Court affirmed the trial court's application of Georgia's "neutral principles of law" approach to church property disputes through which the trial court granted judgment to the majority group.

In reviewing the case the first question before the Supreme Court was whether a civil tribunal can resolve a dispute over the ownership of church property. In this regard the court concluded that "[t]here can be little doubt about the general authority of civil courts to resolve this question." *Id.* at 602, 99 S.Ct. at 3024.[1] In reaching

---

**1.** The ability of a civil court to resolve disputes regarding the ownership of church property stems from the state's "obvious and legitimate interest in the peaceful resolution of property disputes." *Jones*, 443 U.S. at 602, 99 S.Ct. at 3025. In an attempt to come within this narrow exception to the general rule that civil courts lack jurisdiction of church disputes, plaintiffs allege that they have "a protectable property interest in insuring that officials within the organization are properly elected under the bylaws." (Plaintiffs' Brief in Support of Summary Judgment, p. 19). This is not the type of property dispute contemplated by *Jones* or the numerous Georgia cases cited by plaintiffs. *See e.g., Edwards v. Thomas*, 204 Ga. 766, 51 S.E.2d 855 (1949) and *Knowles v. White*, 199 Ga. 772, 35 S.E.2d 451 (1945).

this conclusion the court did not cite neutral principles at all because neutral principles are not relevant to whether a court can decide a particular dispute. Once the Supreme Court had decided that a civil court could exercise jurisdiction over this church dispute it then turned to the second question before it—whether the neutral principles of law approach used by Georgia courts was a proper method of resolving such a dispute. The court concluded that Georgia's approach was constitutionally permissible. This court does not read *Jones* as holding that all church-related disputes can be decided by civil courts if the process takes place by the application of neutral principles. In all cases a court must still decide, as an initial matter, whether the particular dispute is one which the court may decide.

▇ To determine whether this court may, constitutionally, resolve the present dispute the court must decide the exact nature of this dispute. Plaintiffs characterize the dispute as a breach of contract, the contract being the SBC bylaws which defendants allegedly breached through an incorrect interpretation of *Robert's Rules of Order*. As stated earlier, the court views this characterization as an oversimplification of the dispute. What is actually at issue in this case is a question of church governance. Whether Reverend Dr. Stanley's rulings were correct or patently incorrect is irrelevant because a decision as to validity of his rulings would involve this court in the internal affairs of the Southern Baptist Convention, a position the court cannot assume.

The fact that a civil court must not become involved in disputes of this type has been made abundantly clear by the Supreme Court. In *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871) the Court considered a controversy over which of two groups of persons were the ruling elders of a hierarchical church. In this case the court established the lasting limitations on a civil tribunal's power to resolve such disputes:

The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All that unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them redressed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions be binding in all cases of ecclesiastical cognizance, subject only to such appeals as to the organism itself provides for.

. . . .

... "[T]he judicial eye cannot penetrate the veil of the church for the forbidden purpose of vindicating the alleged wrongs of excised members; when they became members they did so upon the condition of continuing or not as they and their churches might determine, and they thereby submit to the ecclesiastical power and cannot now invoke the supervisory power of the civil tribunals."

*Id.* 80 U.S. at 728–31 (citation omitted).

This limitation was recently reaffirmed in *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). In *Serbian*, the hierarchical Mother Church had removed and defrocked a bishop. In addition, the Mother Church changed the internal administration of its American Diocese and reorganized it into three separate dioceses. The bishop sued claiming that "the proceedings of the Mother Church ... were procedurally and substantively defective under the internal regulations of the Moth-

er Church and were therefore arbitrary and invalid." *Id.* at 698, 96 S.Ct. at 2375. The bishop claimed that he was the true Bishop of the American Diocese, and that, as holder of that ecclesiastical office, he controlled certain property in dispute. The Supreme Court of Illinois ruled in favor of the bishop, but the Supreme Court of the United States reversed on grounds that the state court's determination was based on inquiries "into matters of ecclesiastical cognizance and polity" in violation of the First Amendment. *Id.*

In reaching its decision in *Serbian* the Supreme Court noted that the Illinois Supreme Court had invalidated the decision to defrock the bishop on the ground that it was "arbitrary" because a detailed review of the evidence disclosed that the proceedings resulting in [the bishop's] removal and defrockment were not in accordance with the prescribed procedure of the constitution and the penal code of the Serbian Orthodox Church. The Supreme Court held that "[n]ot only was this 'detailed review' impermissible under the First and Fourteenth Amendments, but in reaching this conclusion, the court evaluated conflicting testimony concerning internal church procedures and rejected the interpretations of relevant procedural provisions of the Mother Church's tribunals." *Serbian,* 426 U.S. at 718, 96 S.Ct. at 2384. This is the exact type of inquiry plaintiffs would have this court undertake, and one which is clearly impermissible.

For these reasons the court holds that this dispute is one involving questions of internal church affairs and governance over which this court has no jurisdiction. Accordingly, the court GRANTS defendants' motion for summary judgment on this ground. Having ruled in this manner the court does not reach defendants' arguments concerning the amount in controversy.

In summary, the court GRANTS defendants' motion for summary judgment. All other pending motions are rendered moot by this decision. This decision terminates this case.